UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ARIEL ANTONMARCHI,

                            Plaintiff,                          No. 03 Civ. 7735 (LTS)(KNF)

        -v-

CONSOLIDATED EDISON COMPANY
OF NEW YORK, INC.,

                            Defendant.

---

OPINION AND ORDER

        Plaintiff Ariel Antonmarchi ("Plaintiff") brings this action against his former employer, Consolidated Edison ("Con Edison," or "Defendant"), alleging that he has been subjected to discrimination on the basis of his race or ethnicity, retaliated against for complaining of discrimination, and retaliated against for reporting workplace safety violations. In his First Amended Complaint, Plaintiff asserts claims against Defendant for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. ("Title VII"), and 42 U.S.C. §1981 ("§1981"). Plaintiff also asserts parallel state claims against Defendant for violations of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL," collectively "state and local human rights laws"). These federal, state and local law claims are based on allegations that Con Edison subjected Plaintiff to a hostile work environment and disparate treatment on the basis of his Puerto Rican ancestry and retaliated against him when he complained about this treatment.

        Additionally, Plaintiff asserts claims against Defendant for violations of New

York Labor Law §740 ("§740," or "New York's Whistle-Blower Law").  These claims are based on allegations that Defendant retaliated against Plaintiff for reporting safety violations.  Plaintiff has also moved the Court for leave to amend his First Amended Complaint as it pertains to his §740 claims.

The Court has jurisdiction of Plaintiff's Title VII and §1981 claims under 28 U.S.C. §1343 and 42 U.S.C. §2000s-5(f)(3).  The Court exercises supplemental jurisdiction of Plaintiff's state and local human rights laws claims pursuant to 28 U.S.C. §1367.

The Court has carefully considered the parties' submissions.  For the reasons set forth below, Defendant's motion for summary judgment is denied with respect to: Plaintiff's Title VII, §1981, NYSHRL and NYCHRL retaliation claims arising from Plaintiff's dismissal in August 2002;  Plaintiff's §1981, NYSHRL and NYCHRL retaliation claims arising from the January 2002 denial of Plaintiff's application for a "Splicer" position; and Plaintiff's §1981, NYSHRL and NYCHRL disparate treatment and retaliation claims arising from his October 2001 evaluation and subsequent wage increase denial.  Defendant's motion is granted with respect to the remainder of Plaintiff's Title VII, §1981, NYSHRL and NYCHRL claims, and with respect to Plaintiff's §740 claims.  Plaintiff's motion to leave to amend his complaint is denied.

## I.  BACKGROUND

The material facts are undisputed unless stated otherwise.  Plaintiff is ethnically

part Italian and part Puerto Rican. (Def.'s Rule 56.1 Stmt.¶2.[1])  Plaintiff began employment with

Con Edison in July 2000 as a general utility worker, an entry-level, union-represented position.

Id., ¶1.

Plaintiff alleges that, soon after he became a Con Edison employee, he began

observing unsafe work conditions and complaining about them to his supervisors. (Id. ¶¶5-7.)

Plaintiff also alleges that he was subjected to ethnically hostile remarks by his co-workers and

superiors, and that he complained about this conduct on several occasions. (See Pl.'s Rule 56.1

Stmt. ¶7.)  In the beginning of Plaintiff's employment, Plaintiff alleges that he and another

Hispanic co-worker were the only two employees excluded from OHSA training.  Plaintiff also

alleges that his supervisor, one McAnn, said that "minorities bring nothing but trouble."  (Pl.'s

Dep. 164-165.)  Plaintiff also alleges that he was excluded from co-worker post-project

luncheons by his superior, Senior Specialist Boland, because "[the luncheons] don't have Puerto

Rican food."  (Id. at 165.)  Boland also allegedly told Plaintiff that blacks and Hispanics "degrade

the workforce."  (Id. at 165-166.)  After Plaintiff complained about the luncheon exclusions, an

investigation by Con Edison's Human Resource Services found that Plaintiff's exclusion was

proper because such post-project luncheons are reserved for employees who work on the project

for at least 75% of the total job time, which Plaintiff had not.  (Decl. of Michael Addeo, Ex. D

("Results of Investigation").)  Plaintiff further alleges that his Puerto Rican flag near his work

section was torn from his wall and he was told not to speak Spanish.  (Id. at 167.)  Plaintiff

alleges that Con Edison also took a variety of discriminatory and/or retaliatory actions against

---

[1]     Citations to the parties' respective Local Rule 56.1 statements incorporate by
reference citations to the underlying evidentiary submissions.

him, including repeatedly transferring him between departments, falsifying his attendance record, denying his applications for advancement, unjustly administering negative evaluations, and ultimately terminating his employment. (See generally Id. ¶¶6, 7, 10, 11, 13, 16, 50, 85.)

In July 2001 Plaintiff was promoted to a "Mechanic B" position in Con Edison's Maintenance and Construction Services department, the next higher title in his job family. (Def's Rule 56.1 Stmt. ¶9.) In August 2001 Plaintiff applied for a "Mechanic B" position in Con Edison's Customer Operations department. (Id. ¶14.) Con Edison contends, and Plaintiff does not appear to dispute, that the application, if granted, would not have involved a change in title, pay, or responsibilities. (Id. ¶¶14-15.) Plaintiff was turned down for this position twice. (Id. ¶15.) Con Edison alleges that Plaintiff was turned down because he lacked knowledge of turn-on and turn-off procedures for gas service and because a more senior, qualified employee had applied for the position. (Id.)

Con Edison's union employees receive periodic "progression" or "merit" raises for each period in which they maintain a satisfactory performance record. (See Def.'s Rule 56.1 Stmt. ¶8.) Plaintiff received a negative evaluation in October 2001 written by Supervisors Tony Rivers and Anthony Castelluzo (allegedly on orders from Senior Specialist Boland), which resulted in the denial of that period's merit pay increase. (Id. ¶10.[2]) The evaluation criticized Plaintiff for spending too much time talking and for neglecting his work responsibilities. (Id. ¶11.[3]) Plaintiff alleges that Supervisor Boland and Supervisor Castelluzo separately told Plaintiff

---

[2] While Plaintiff's 56.1 Statement purports to dispute this factual assertion, Plaintiff challenges the legitimacy of the evaluation, not the assertion that the negative evaluation was what cost him his raise. See Pl.'s R. 56.1 Statement ¶ 10.

[3] While Plaintiff's 56.1 Statement purports to dispute this factual assertion, it questions the motivation of the evaluator and does not challenge the description of the content of the evaluation. See Pl.'s Rule 56.1 Stmt. ¶ 11

that the negative evaluation was punishment for his safety and discrimination complaints. (Id. ¶11;  Pl.'s Dep. at 203.)  Plaintiff further alleges that Castelluzzo told Plaintiff that he was "only taking half of [Plaintiff's] raise away" because he "liked half" of Plaintiff.  Plaintiff alleges in his deposition that this comment relates to his mixed Italian and Puerto Rican heritage.  (Pl.'s Rule 56.1 Stmt ¶¶11, 20.)

Plaintiff complained to Con Edison's Human Resources department about the evaluation.  (Def.  Rule 56.1 Stmt. ¶20.)  The complaint was forwarded to Human Resource Specialist Michael Addeo, who performed an investigation. (Id. ¶21.)  Addeo's report found that Plaintiff had not been treated unfairly due to his ethnicity in the incidents involving him: not being invited to luncheons, being forced to work overtime and being transferred from his assignments; that Plaintiff was not retaliated against for complaining about these incidents; but that Plaintiff's poor performance evaluation in 2001 was questionable based on prior job performances and the opinions of some of his supervisors.  (See generally Addeo Decl.)

In January 2002 Plaintiff's job application for a Splicer position was denied. (Def.'s Rule 56.1 Stmt. ¶17.)  The application, if granted, would have resulted in a title change and wage increase.  (Id. at ¶17.)  The Splicer position required applicants to have no more than three "frequencies"[4] during any 12-month period in the 24 months before they applied for the position. (Id.)  Con Edison claims that Plaintiff had four frequencies during this period, and his application was denied for that reason.  (Id.)  Plaintiff alleges that Senior Specialist Boland intentionally misclassified Plaintiff's excused absences as unexcused, to sabotage his application. (Pl.'s Rule 56.1 Stmt. ¶17.)

---

[4]     A "frequency" is an episode of absence.  For example, an employee who misses work for a week receives five absence-days but only a single frequency.

In April 2002 Plaintiff received a verbal warning for missing a shift. Plaintiff alleges that he complained to Supervisor Freddy Haymach about an unsafe work condition, and that Haymach threatened to write Plaintiff up as having missed a shift. (Def.'s Rule 56.1 Stmt. ¶13.) Plaintiff claims that, although Boland knew Plaintiff was not absent, he disciplined Plaintiff anyway. (Id.) Plaintiff alleges that he complained to Marjorie Brown of Con Edison's Equal Employment Office on May 14, 2002 about Boland's allegedly discriminatory and retaliatory behavior. (Pl.'s Rule 56.1 Stmt. ¶13.) Plaintiff alleges that his complaints were then forwarded to the Auditing Department's Ronald Verlizzo, who Plaintiff claims subsequently threatened him. (Pl.'s Dep., 222; Sykes' Dep. 18-19.) Plaintiff also claims that, as a result of this animosity, Verlizzo later terminated him under the pretense that Plaintiff had interfered with his investigation. (Pl.'s Dep., 222; Sykes' Dep. 15.)

In May 2002 Plaintiff complained to Deputy Omnibudsman Richard Bagwell and to EEO Officer Brown about Boland's allegedly retaliatory and discriminatory actions towards him. Plaintiff claims that he was denied a wage increase the next month because of these complaints.

In June 2002 Plaintiff received two warnings and another negative evaluation. (Def.'s Rule 56.1 Stmt. ¶13.) The first warning was issued to Plaintiff for leaving a 12-hour shift in May or June after only eight hours. (Id.) Plaintiff claims that he had permission to leave early, and that his supervisors were aware of this permission. (Pl.'s Rule 56.1 Stmt.¶13.) The second warning was allegedly issued to Plaintiff for arriving late and failing to complete a training course at Con Edison's Learning Center on May 2, 2002. (Def.'s Rule 56.1 Stmt. ¶13.) It is undisputed that Plaintiff was late because he was meeting with Michael Addeo, who had previously investigated Plaintiff's complaint regarding his October 2001 evaluation. (Id.) The

parties dispute whether Plaintiff had permission to meet with Addeo rather than attend the course.  (Id.; Pl.'s Rule 56.1 Stmt. ¶13.)  Plaintiff alleges that the course instructor was a personal friend of Senior Specialist Boland and failed Plaintiff in retaliation for filing complaints about Boland.[5]  (Pl.'s Rule 56.1 Stmt. ¶13.)  On June 28, 2002, Boland issued Plaintiff a negative evaluation for failing the class and leaving his shift early.  (Def.'s Rule 56.1 Stmt. ¶13.)  That evaluation resulted in the denial of Plaintiff's merit raise for that period. (Id.)

While the exact date is unclear, Plaintiff filed another complaint alleging discrimination and harassment, which included an allegation that Con Edison employees had inappropriately contacted his daughter's day care center seeking information to determine whether Plaintiff's excuse of leaving work early to pick up his daughter were true.  (Def.'s  Rule 56.1 Stmt. ¶¶23, 29; Verlizzo Dec. ¶15.)   An investigation followed, during which Con Edison learned that Plaintiff had asked the day care center not to cooperate with Con Edison employees seeking information about his daughter.  (Id. ¶31.)  On or about August 28, 2002, Con Edison fired Plaintiff, alleging that Plaintiff had interfered with a company investigation.  (Id. ¶32.) Beginning on September 3, 2002, Plaintiff grieved his termination through the grievance and arbitration procedure provided in his union contract.  (Id. ¶33.)  A settlement agreement was executed and Plaintiff was reinstated on December 8, 2002.  (Id. ¶ 46.)  The parties dispute the content of the agreement and the events leading to its signing.  (Id. ¶¶ 35, 38, 41.)

Although both sides agree that a grievance arbitration took place between Plaintiff

---

[5]     These complaints consisted of Plaintiff allegedly complaining to Richard Pertucci after Boland did nothing when Plaintiff advised him of corroded and sparking wires (Pl's Dep., 35);  and complaining to Manager Michael O'Donnell and VP Kevin Walker about Boland reassigning Plaintiff in retaliation for his complaints about safety hazards.  Id., 67-68.

and his lawyers and Defendant's lawyers, each side proffers a different version of the events surrounding the agreement. Con Edison claims that Plaintiff signed the agreement after it was sent to him and proffers a fax of a notarized document signed and dated by Plaintiff, attesting to Plaintiff's having agreed to sign the Agreement. (Schnurr Dec. ¶11 and Exh. A.) Plaintiff admits that this acknowledgment document, and the signature on it, are genuine. (Pl.'s Dep. 231.)

Plaintiff, for his part, claims that he did not sign the settlement agreement submitted to the Court by Con Edison. In his deposition, Plaintiff testified that he had refused to sign the version of the agreement proffered by Con Edison specifically because of the broad release it contained. Plaintiff has offered affidavits from legal professionals who allege that they advised him against signing the agreement because of the release. Plaintiff alleges that Con Edison subsequently offered a revised agreement that did not contain the broad release, that Plaintiff signed the revised agreement and delivered it to the office of the Union Counsel, but was not provided with a copy of the signed agreement for his records. Defendant denies participation in this revised agreement and the existence of the agreement itself.

Plaintiff alleges that he continued to face hostile remarks after his reinstatement. (See Pl.'s Rule 56.1 Stmt. ¶84.) Plaintiff alleges that supervisors Tracy and Robinson screamed at him not to speak in Spanish and told him to "get the fuck out of this country" and that Puerto Ricans are ruining the country. (Pl.'s Dep. 180.) Plaintiff alleges that his supervisor in the law department remarked to him that Hispanics in professional baseball "should be throwing oranges through fruit baskets back in their own country." (Id. at 244.)

Plaintiff suffered a back injury while lifting a manhole cover in February 2003 and

was assigned to temporary light-duty positions. (Def.'s Rule 56.1 Stmt. ¶49.) Once Con Edison determined that Plaintiff's injuries were permanent, Plaintiff was placed in Con Edison's "C-6" (injured-worker) program. (Id. ¶57.) The program provides injured workers with temporary positions while offering them six months to participate in training courses and apply for permanent positions that comport with their medical restrictions. (Id. ¶80.)

Plaintiff filed a formal complaint with the EEOC on April 2, 2003, approximately seven months after his August 2002 discharge and four months after his reinstatement. (Def.'s Rule 56.1 Stmt. ¶51.) The complaint alleged that Con Edison retaliated against Plaintiff for his pre-termination complaints by delaying his back pay (which the settlement had allegedly provided for), forcing Plaintiff to work permanent night shifts, and blocking his applications for a transfer. (Decl. of David J. Reilly, Ex. E ("EEOC Charge of Discrimination Form").) Plaintiff had previously filled out, but had not formally filed, an EEOC form on September 24, 2002, which alleged "harassment, retaliation for bringing up safety issues [and] filing discrimination charges[,] being passed up for promotions, transfers, and raises, purposely and maliciously. Just because [Plaintiff is] Hispanic." (Decl. of Peter A. Romero, Ex. N ("EEOC Charge of Discrimination Form" and accompanying letter).)

In May 2003 Plaintiff and his co-worker Daniel Moreno were given permission to participate in Con Edison's Memorial Day ceremony to honor a Puerto Rican soldier who had been killed in Iraq. (Moreno's Dep. 52-53.) Plaintiff alleges that he and Moreno were harassed because of this. Plaintiff alleges that his supervisor Mullen berated and threatened them with "discipline," that Mullen made "derogatory remarks,[6]" that Mullen falsely issued Plaintiff a

---

[6] Plaintiff never specifies the nature of the "derogatory remarks."

written discipline for going AWOL while Plaintiff was picking up the soldier's family, and that Mullen removed Plaintiff's Puerto Rican flag from his workplace.  (Id., at 58-59, 61-62; Pl.'s Dep. 183-185.)

Plaintiff, finally, alleges that, after he filed his April 2003 charge, Defendant ceased to use him productively in temporary positions and repeatedly transferred him to inconvenient offices that required long commutes, aggravating his back injury.  (Pl.'s Rule 56.1 Stmt. ¶50.)  Plaintiff's co-worker Moreno alleges that these assignments were inconsistent with the company's standard policy for dealing with employees on temporary limited duty.  (Moreno's Dep. 30-31.)  Plaintiff applied for several jobs and was allegedly rejected on the basis of his prior disciplinary record.[7]  (Def.'s Rule 56.1 Stmt. ¶85.)  Plaintiff specifically alleges that he was passed over for a job performing clerical work that was performed by temporary employee LaToisha Daniels.  (Moreno's Dep. 20-22, 25.)  Moreno said it was a mystery to him why Con Edison transferred Plaintiff, but kept Daniels, a temporary worker.  (Id.)  When Plaintiff failed to secure a permanent position by the end of his C-6 period on December 7, 2003, his employment was terminated the following day.  (Def.'s Rule 56.1 Stmt. ¶85.)

## II..  DISCUSSION

Summary judgment is granted in favor of a moving party where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(c).  In the summary judgment context, a fact is material "if it 'might affect the

---

[7]     The parties dispute the number of positions for which Plaintiff applied.

outcome of the suit under the governing law,'" and "[a]n issue of fact is 'genuine' if 'the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Holtz v.

Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 248 (1986)). The non-moving party "must do more than simply show that there is

some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward

with specific facts showing that there is a genuine issue for trial." Caldarola v. Calabrese, 298

F.3d 156, 160 (2d Cir. 2002) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 586-87 (1986) (alteration in original)). "[M]ere conclusory allegations, speculation or

conjecture" will not provide a sufficient basis for a non-moving party to resist summary

judgment. Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

A.   The Settlement and Release Agreement

It is undisputed that the settlement agreement, as offered by Con Edison, contains

a broad release clause that, if upheld by the Court, would bar Plaintiff's claims for events before

his December 8, 2002, reinstatement.[8] Con Edison has proffered a notarized document[9] that was

---

[8]   The clause reads as follows:
"In consideration of this Agreement, the Employee and the Union hereby irrevocably and unconditionally release Con Edison, and forever discharge the Company and any of its successors or assigns, from any and all claims that the Employee or the Union has ever had or currently has against Con Edison pursuant to common law of any statute [. . .] arising from or related to his employment relationship with the company or his separation from the Company up to and including the date of his reinstatement." (Decl. of Rory Schnurr, Ex. A ("Grievance Settlement and General Release").)

[9]   The document, which is in the form of a letter, states in pertinent part:
"I, Ariel Antonmarchi have agreed to sign the agreement presented to me by Consulted [sic] Edison on November 22, 2002. I will hand deliver this agreement to local 1 & 2 to Counsel Kevin Jenkins or anyone there to receive it. I have agreed to the terms of the agreement. I will uphold my end of the agreement. I thank you for your time and professionalism throughout the course of this

allegedly submitted with the signed agreement and bears Plaintiff's signature. Con Edison also

has proffered expert testimony that the signature on the agreement likely belongs to Plaintiff.

Plaintiff claims that he signed a different document than the one proffered here by Con Edison

and that the signature on that document is not his, but does not proffer a signed copy of a

different document.

Plaintiff's allegation that he did not sign the agreement with the release provision

cannot be rejected as conclusory at this summary judgment stage. Resolution of whether the

signature on the agreement belongs to Plaintiff necessarily involves weighing Plaintiff's

credibility against that of Defendant's handwriting expert, a task that is not properly performed

by the Court on a motion for summary judgment. Fincher v. County of Westchester, 979 F. Supp.

989 (S.D.N.Y. 1997). Accordingly, Defendant's motion for summary judgment on the grounds

that Plaintiff's claims are barred by the settlement and release agreement is denied.

B.   Plaintiff's Hostile Work Environment Claim

Plaintiff contends that offensive remarks about his Puerto Rican heritage by his

supervisors and co-workers throughout the period of his employment at Con Edison created a

hostile work environment that violated Title VII.[10]   The standard for assessing a hostile work

environment claim is both objective and subjective: the alleged victim must perceive the

environment to be hostile or abusive, and the conduct must be so severe or pervasive that a

---

agreement." Id.

[10]   Plaintiff's hostile work environment claims under §1981, the New York State
Human Rights Law and the New York City Human Rights Law are subject to the
same standard of proof as claims under Title VII.  See Cruz v. Coach Stores, Inc.,
202 F.3d 560, 565 n.1 (2d Cir. 2000); Kennedy v. J.P Morgan Chase & Co., 325
F. Supp. 2d 401, 403, 408-09 (S.D.N.Y. 2004).

reasonable person would find the environment hostile or abusive.  <u>Harris v. Forklift Systems</u>, 510

U.S. 17, 21-22 (1993). "To withstand summary judgment, a [p]laintiff must demonstrate either

that a single incident was extraordinarily severe, or that a series of incidents were sufficiently

continuous and concerted to have altered the conditions of her working environment."  <u>Whidbee

v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 69 (2d Cir. 2000) (internal citations and

quotation marks omitted).  "In the end, [d]etermining whether workplace harassment was severe

or pervasive enough to be actionable depends upon the totality of the circumstances." (<u>Id.</u>)

Additionally, Plaintiff must also demonstrate that the hostile work environment complained of

arose from hostility based on the Plaintiff's membership in a protected class.  An environment

that would be equally harsh for all workers, or that arises from personal animosity, is not

actionable under the civil rights statutes.  <u>See</u> <u>Brennan v. Metropolitan Opera Ass'n</u>, 192 F.3d

310, 318 (2d Cir. 1999); <u>Richardson v. New York State Dep't of Corr. Serv.</u>, 180 F.3d 426, 440

(2d Cir. 1999).

  Courts look to a number of non-exclusive factors in evaluating the pervasiveness

or severity of the allegedly discriminatory workplace conduct in determining whether a plaintiff

has a viable Title VII claim.  <u>Harris</u>, 510 U.S. at 23.  These factors include: (1) the frequency of

discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or

humiliating or a "mere offensive utterance;" (4) whether the conduct unreasonably interfered

with Plaintiff's work; and (5) what psychological harm, if any, resulted.  <u>Richardson</u>, 180 F.3d

at 437 (internal quotation marks omitted); <u>Harris</u>, 510 U.S. at 23; <u>Quinn v. Green Tree Credit

Corp.</u>, 159 F.3d 759, 767-68 (2d Cir. 1998); <u>Huang v. Gruner</u>, No. 99 Civ. 5058, 2000 U.S.

Dist. LEXIS 13732, at *8 (S.D.N.Y. Sept. 20, 2000).  Incidents that are isolated or few in

number will seldom support a finding of hostile work environment. <u>Whidbee</u>, 223 F.3d at 69.

However, an isolated incident could give rise to a hostile work environment claim if the

incident was so severe or egregious so as to alter the conditions of the work environment.

<u>Torres v. Pisano</u>, 116 F.3d 625, 631 n. 4 (2d Cir. 1997). "For racist comments, slurs, and jokes

to constitute a hostile work environment, there must be more than a few isolated incidents of

racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of

opprobrious racial comments. Thus, whether racial slurs constitute a hostile work environment

typically depends upon the quantity, frequency, and severity of those slurs, considered

cumulatively in order to obtain a realistic view of the work environment." <u>Schwapp v. Town of</u>

<u>Avon</u>, 118 F.3d 106, 110-111 (2d Cir. 1997) (internal citations and quotation marks omitted).

  Here, considering the totality of the circumstances presented, Plaintiff does not

proffer enough evidence to show that Plaintiff's supervisors' and coworkers' conduct could be

viewed by a rational fact finder as having altered the conditions of Plaintiff's work environment

for the worse. <u>See</u> <u>Whidbee</u>, 233 F.3d at 69. Plaintiff has identified roughly ten alleged

instances of racially derogatory remarks over the course of his three-year employment. These

include: McAnn's comment that "minorities bring nothing but trouble"; Boland's comments

that Plaintiff wasn't invited to employee luncheons because they "[didn't] have Puerto Rican

food" and that blacks and Hispanics "degrade the workforce;" Plaintiff's Puerto Rican flag

being torn off his wall and Plaintiff being told that he could not speak Spanish; Castelluzo's

comment that he was only taking half of Plaintiff's raise away because he liked the "non-Puerto

Rican" half of Plaintiff; Tracy and Robinson's remarks telling Plaintiff to "get the fuck out of

this country" and telling him not to speak Spanish; Mullen's harassment of Plaintiff for

honoring a Puerto Rican veteran; and a comment to Plaintiff by a supervisor in the law department that Hispanics in baseball "should be throwing oranges through fruit baskets in their own country."  The alleged incidents, while offensive, were isolated and relatively minor. Viewed as a whole, the evidence lacks the objective indicators of severity or pervasiveness that a rational fact finder would need to make a finding in favor of Plaintiff, and is thus insufficient to sustain Plaintiff's hostile work environment claim.  Accordingly, Defendant's motion for summary judgment on Plaintiff's hostile work environment claim is granted.

C.   Plaintiff's Disparate Treatment and Retaliation Claims

Plaintiff alleges that Con Edison treated him unfavorably because of his Puerto Rican ancestry, and retaliated against him when he complained, in violation of Title VII, §1981, and state and local human rights laws.  Disparate treatment and retaliation claims under Title VII are analyzed under the three-step burden shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996) (applying burden-shifting analysis to retaliation claims).[11]

(i)   Legal Standards: Disparate Treatment and Retaliation Claims

To establish the viability of a disparate treatment claim in the summary judgment context, a plaintiff must first tender evidence sufficient to establish a *prima facie* case of disparate treatment.  McDonnell Douglass Corp., 411 U.S. at 802.  Such evidence must show

---

[11]     Plaintiff's discrimination claims under §1981, the New York State Human Rights Law and the New York City Human Rights Law are subject to the same standard of proof as claims under Title VII.  See Cruz v. Coach Stores, Inc., 202 F.3d 560, 565 n.1 (2d Cir. 2000); Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000).  §1981 provides a cause of action for retaliation claims as well as discrimination claims.  CBOCS West, Inc. v. Humphries, 128 S. Ct. 1951, 1961 (2008).

that (1) plaintiff belongs to a protected class, (2) he was qualified for the position; (3) that he suffered an adverse employment action; and (4) the circumstances surrounding the adverse employment action give rise to an inference of discrimination.  See id.; Schnabel v. Abramson, 232 F.3d 83, 87 (2d. Cir. 2000).

"To make out a *prima facie* case of retaliation, an employee must show that he was [1] engaged in a protected activity; [2] that he suffered an adverse employment decision; and [3] a causal connection between the protected activity and the adverse employment decision."  Taitt v. Chemical Bank, 849 F.2d 775, 777 (2d Cir. 1988).  Protected activity in this context includes formal as well as informal complaints.  See Rodriguez v. Beechmont Bus Serv., Inc., 173 F. Supp. 2d 139, 149 (S.D.N.Y. 2001).  "A plaintiff can demonstrate a causal connection (a) indirectly by showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus."  Carr v. West LB Admin., Inc., 171 F. Supp. 2d 302, 309 (S.D.N.Y. 2001) (citing DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir. 1987)).

Once a plaintiff has made out a *prima facie* case of disparate treatment or retaliation, the burden shifts to the employer to offer some legitimate, nondiscriminatory rationale for its actions.  McDonnell Douglas Corp., 411 U.S. at 802.  An employer sustains its burden "by producing *any evidence* of nondiscriminatory reasons, whether ultimately persuasive or not."  St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993).  "The employer need not prove by a preponderance of the evidence that the reasons for his action were not discriminatory, but may simply present clear and specific reasons for the action."  Gibbs v.

Consolidated Edison Co., 714 F. Supp. 85, 89 (S.D.N.Y. 1989) (internal quotations omitted). If the employer meets its burden, the plaintiff then is required to "present sufficient evidence for a reasonable jury to conclude that [the defendant] discriminated against him" in the manner prohibited by the statute, and that the defendant's stated reason is a pretext for the prohibited discriminatory action. Schnabel, 232 F.3d at 88.

      (ii)      Analysis of Plaintiff's Disparate Treatment Claims

The Court assumes for purposes of this motion practice that Plaintiff's Puerto Rican ancestry establishes his membership in a protected class. See Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987). To establish the second prong of satisfactory job performance, a Plaintiff need only "demonstrate that [he] possesses the basic skills necessary for performance of [the] job." See Owens v. N.Y. Hous. Auth., 934 F.2d 405, 409 (2d Cir. 1991) (internal quotation marks and citations omitted). Here, Plaintiff has met the minimal burden of proffering evidence that he possessed the basic skills for his positions prior to the time of his injury to his back while on the job. Though Plaintiff was cited for misconduct and absences, there is no evidence indicating that he lacked the basic skills of his position. See Owens, 934 F.2d at 409 (noting in the summary judgment context that despite a finding of misconduct, a plaintiff may have sufficient ability to perform his duties to establish satisfactory job performance for a *prima facie* discrimination claim).

*Plaintiff's Alleged Denial of OSHA Training*

The Court turns first to Plaintiff's claim that he and the only other Hispanic member of his department were denied "OSHA training" that was given to their co-workers. Plaintiff does not proffer any evidence that identifies the other employees who received this

training or the circumstances under which they received it. The record of Con Edison's investigation indicates that Plaintiff did in fact receive some type of safety training. Additionally, the evidence proffered by Plaintiff is devoid of detail and is conclusory. Because Plaintiff fails to proffer any evidence that is non-conclusory, Plaintiff has failed to present enough evidence to allow a rational fact finder to determine that Plaintiff has suffered an adverse employment action. See Jasmin v. Dep't of Labor, No. 04 CV 10237, 2007 WL 1746909, at *8 (S.D.N.Y. Jun. 15, 2007). Plaintiff accordingly fails to establish a *prima facie* case in regards to this claim.

### *Plaintiff's Alleged Exclusion from Award Luncheons*

Plaintiff next alleges that Senior Specialist Boland excluded him from award luncheons. In his deposition testimony, Plaintiff alleged that, when he asked Boland why he was not invited, Boland responded that Plaintiff might not have been invited because "[the luncheons] don't have Puerto Rican food." (Decl. of Peter A. Romero, Ex. X (Pl.'s Dep. 165:15-18).) Plaintiff does not proffer enough evidence to meet his *prima facie* burden in this instance because he has not proffered any evidence that could allow a fact finder to find that this exclusion from luncheons led to an adverse employment action. Although Plaintiff alleges in an affidavit that attendance at luncheons is relevant to promotional decisions, Plaintiff has not identified an instance where he was denied a promotion on this ground. See Browne v. City of New York, 419 F. Supp. 2d 315, 332 (E.D.N.Y. 2005) ("A negative evaluation alone, absent some accompanying adverse result such as demotion, diminution in wages, or other tangible loss, does not constitute an adverse employment action. . .").

Even if Plaintiff had established a *prima facie* case in connection with the

luncheons, summary judgment for Defendant would still be appropriate with respect to this claim because Plaintiff has failed to rebut as pretextual Defendant's proffered nondiscriminatory rationale. Defendant asserts that "the criteria for invitation to the luncheon is that the invitee must have worked approximately 75% or more of the total time the job was running." (See Decl. of Michael Addeo, Ex. D.) Plaintiff has not proffered any evidence that he met this requirement. Addeo's declaration also identified a white employee who was similarly excluded from luncheons. Plaintiff has not responded to this explanation. Therefore, Plaintiff has not satisfied his burden of coming forward with evidence sufficient to frame a genuine issue of fact as to whether the proffered reasons is a pretext for the alleged discrimination or for retaliation.

*Alleged Interference with Plaintiff's Application for a Mechanic B Position*

Plaintiff next alleges that Supervisor Boland interfered with his application for a Mechanic B position in the Customer Operations department. At the time of Plaintiff's application, Plaintiff held a Mechanic B position at Con Edison's Maintenance and Constructions Services department. Defendant contends that this application was for a lateral transfer. On the current record, there is no evidence that would allow a rational fact finder to conclude that the transfer would have involved any change in salary, title, responsibility, or that it would have been anything more than a purely lateral transfer between departments. Plaintiff has thus failed to sustain the adverse employment action element of his *prima facie* case as to this job denial. See Williams v. R.H. Donnelly, Corp., 368 F.3d 123, 128 (2d Cir. 2004) (holding that the denial of a lateral transfer that does not involve any significant change in the employee's employment does not constitute an adverse employment action under McDonnell

<u>Douglass</u>).  Moreover, Plaintiff has failed to come forward with evidence that Con Edison's explanation (that Plaintiff was ultimately denied the position because a more senior employee had applied) was pretextual.

*Defendant's Alleged Failure to Utilize Defendant Productively After his Injury*

Plaintiff next alleges that Defendant refused to utilize him productively following his injury in February 2003 and promoted less qualified employees over him.  At the time, Plaintiff was restricted to light-duty work and received temporary assignments.  While Plaintiff's co-worker, Daniel Moreno, alleges that he was surprised at Plaintiff's numerous transfers and alleges that this was against company procedure, Plaintiff has offered only conclusory statements that he possessed the basic qualifications to perform clerical work.  Moreno's testimony indicates that he only unofficially trained Plaintiff to enter "one or two lines" at a time.  ( Decl. of Peter A. Romero, Ex. Y (Dep. of Daniel Moreno 20:20-22).)  By contrast, Con Edison has produced a clerical aptitude test that Plaintiff failed.[12]  Also, Plaintiff offers only conclusory testimony that he was similarly situated to a temporary employee, LaToisha Daniels, who allegedly was not required to pass the clerical test. (<u>See</u> Decl. of Peter A. Romero, Exs. X (Pl.'s Dep. 8:16-18) and Y (Dep. of Daniel Moreno 25:2-5).)  Besides the aforementioned conclusary allegation, Plaintiff produces no evidence that his being passed over was due to any discriminatory animus.  A rational fact finder could not find that Plaintiff was qualified for the position he sought nor could one find that the circumstances could give rise to an inference of discrimination.  Accordingly, Plaintiff has failed to meet his Title VII *prima facie* burden as to this disparate treatment claim.

---

[12]     Con Edison alleges that in order to be placed in a clerical position, an applicant must pass the clerical aptitude test.

*Defendant's Alleged Denial of Wage Increase in October 2001*

Finally, the Court turns to Plaintiff's allegations that Con Edison discriminated against him by specifically denying him a wage increase in October of 2001 because of his Puerto Rican heritage. Plaintiff alleges that Supervisor Castelluzo told Plaintiff that he was "only taking half of [Plaintiff's] raise away," by giving him a negative evaluation (the "October 2001 Evaluation"), because he "liked half" of Plaintiff. Plaintiff alleges in his deposition that this comment relates to his mixed Italian and Puerto Rican heritage. (Pl.'s Rule 56.1 Stmt ¶11); (Pl.'s Dep., at 203). Although this remark might demonstrate ethnic favoritism (because of Plaintiff's Italian ancestry), rather than discrimination, towards Plaintiff, the Second Circuit has held that a Plaintiff's burden in establishing a *prima facie* case under Title VII is *de minimis.* Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005). The Court therefore finds Castelluzo's comment sufficient for a rational fact finder to permit an inference of discriminatory intent, completing Plaintiff's *prima facie* case of discrimination with respect to the October 2001 evaluation and subsequent wage increase denial.

Defendant proffers that Plaintiff's October 2001 evaluation was based, not on discriminatory animus, but on the fair evaluations of Plaintiff's supervisors. Plaintiff, however, has met his burden of proffering enough evidence to permit a rational fact finder to conclude that Defendant's stated reason is pretext for the prohibited discrimination. Specifically, Plaintiff notes that Human Resource Specialist Addeo's internal investigation report expressed doubt as to the legitimacy of those evaluations. The parties offer different versions of Addeo's report, but both versions note that there was a lack of documentation for Plaintiff's alleged

infractions, and that Plaintiff was not warned about his misbehavior prior to the evaluation.[13] (Pl.'s Rule 56.1 Stmt. ¶21.)  Although the report did not ultimately conclude that the October 2001 evaluation was motivated by retaliatory intent, Addeo did recommend that the denial of Plaintiff's wage increase be re-evaluated.  The Court finds that Addeo's report, together with the alleged threats and remarks by Plaintiff's supervisors, precludes summary judgment as to whether Plaintiff's October 2001 evaluation was motivated by racial enmity.  Accordingly, Plaintiff's discrimination claims arising from his October 2001 evaluation and wage increase denial withstand Defendant's summary judgment motion.

### *Conclusion: Plaintiff's Disparate Treatment Claims*

For the above-stated reasons, Defendant is entitled as a matter of law to summary judgment dismissing Plaintiff's following disparate treatment claims: that Plaintiff and another Hispanic co-worker were denied OSHA training; that Boland excluded Plaintiff from award luncheons; that Boland interfered with Plaintiff's application for a Mechanic B position; and that Defendant refused to utilize Plaintiff productively following his February 2003 injury.   However, Defendant's motion for summary judgment on Plaintiff's disparate treatment claim based on his wage increase denial in October of 2001 is denied.

(iii)     Analysis of Plaintiff's Retaliation Claims

*Denial of Plaintiff's Application for a Splicer Position in January 2002*

Plaintiff alleges that Senior Specialist Boland intentionally misclassified Plaintiff's absences, resulting in the denial of Plaintiff's application for a Splicer position in

---

[13]     Defendant's interpretation of the evaluation states that "[i]t is difficult to see a correlation between some of the marginal ratings, the reviewer's comments, and a record that is satisfactory in all respects at the time the review was prepared." Decl. of Michael Addeo, November 10, 2005, Ex. D ("Results of Investigation").

January 2002 in retaliation for his complaints to Marjorie Brown of Con Edison's Equal Employment Office. Because Plaintiff's complaint concerned discrimination, his actions constituted a protected activity. Failure to promote is an adverse employment action. Morris v. Landau, 196 F.3d 102, 110 (2d Cir. 1999). Plaintiff has thus met the first two prongs of his *prima facie* burden under the McDonnell Douglass test. Plaintiff further alleges that Senior Specialist Boland and Supervisor Freddy Haymach each "told Plaintiff that they would make sure he was not given the position due to his complaints." (Pl's Rule 56.1 Stmt. ¶ 16.) These statements could support a finding of retaliatory animus. Defendant denies that these statements were made. Thus there is a genuine issue of fact that precludes summary judgment as to Plaintiff's claim concerning the January 2002 denial of the Splicer position.

### Denial of Plaintiff's October 2001 Wage Increase

The Court turns to Plaintiff's allegations that Con Edison retaliated against him by denying his October 2001 wage increase. As stated in section II(C)(ii), *supra*, Plaintiff's claim that Con Ed's denial of his October 2001 wage increase was impermissibly motivated by racial animus is supported by sufficient evidence to survive Defendant's motion for summary judgment. To support his retaliation claim for the same adverse employment action, Plaintiff asserts that Supervisor Castelluzzo and Senior Specialist Boland specifically told Plaintiff that he was receiving a negative evaluation (that resulted in the wage increase denial) because of, in part, his complaints of racial discrimination. (Pl's Rule 56.1 Stmt. ¶ 11.) Plaintiff's alleged complaints, whether formal or informal, constitute protected activities. See Rodriguez v. Beechmont Bus Serv., Inc., 173 F.Supp. 2d at 149. Furthermore, the aforementioned statements of Castelluzo and Boland were allegedly made contemporaneously with the denial of

the wage increase, satisfying the requirement that the Plaintiff show a causal connection between the protected activity and the adverse employment decision. Plaintiff has thus met his burden in establishing a *prima facie* case. As explained in section II(C)(ii), *supra*, Plaintiff has also proffered sufficient evidence to allow a rational fact finder to conclude that Defendant's alleged nondiscriminatory rationale for the wage increase denial was a pretext. This evidence precludes summary judgment with respect to Plaintiff's Title VII, §1981, NYSHRL and NYCHRL discrimination claims arising from his October 2001 evaluation and wage increase denial.

### *Boland's Verbal Warning to Defendant in April 2002*

Plaintiff next alleges that in April 2002 Senior Specialist Boland issued Plaintiff a verbal warning for missing a shift in retaliation for Plaintiff's reporting an unsafe work condition to Supervisor Haymach. Plaintiff, however, cannot establish a prima facie case of retaliation under Title VII, §1981, or the state and local human rights laws in this instance, because retaliation for safety complaints is not an actionable protected activity under those statutes. Id. Accordingly, Plaintiff has not satisfied his *prima facie* burden as to his April 2002 missed shift and subsequent verbal warning and thus summary judgment on this claim is granted.

### *June 2002: "Disciplines", Negative Evaluation and Subsequent Denial of Wage Increase*

Plaintiff next alleges that, because he complained about Boland's discrimination and retaliation to Deputy Omnibudsman Richard Bagwell on May 6, 2002, and to EEO Officer

Brown on May 14, 2002, he was subjected to "unwarranted disciplines"[14] and a negative evaluation the next month. Since Plaintiff was allegedly denied a wage increase because of the negative evaluation, and the negative evaluation was issued in response to the disciplines, Plaintiff has demonstrated that he suffered an adverse employment action. See Ebanks v. Neiman Marcus Group, Inc., 414 F. Supp. 2d 320 (S.D.N.Y. 2006). See also Cunningham, 2006 WL 842914 at *17 (holding that deliberately failing an employee on a training exam that could lead to promotion constitutes an adverse employment action). Plaintiff's alleged complaints, whether formal or informal, constitute protected activities. See Rodriguez, 173 F.Supp. 2d at 149. The Second Circuit has held a temporal proximity of less than two months between complaint and adverse action sufficient to support an inference of retaliation. Plaintiff's claim thus meets the causal connection prong of the *prima facie* case. Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir. 1998). The Court therefore finds that Plaintiff has proffered enough evidence so that a rational fact finder could find that Plaintiff established a *prima facie* case of retaliation under Title VII, §1981, and the state and local human rights laws in the context of his June 2002 disciplines, evaluation, and wage increase denial.

Con Edison responds to Plaintiff's *prima facie* case by proffering evidence that Plaintiff was issued warnings for leaving early on May 6, 2002, and for failing a training course at Con Edison's Learning Center on May 2, 2002, and that the negative evaluation resulted from these warnings. Plaintiff offers only conclusory allegations that the length of time between his alleged absence and the resulting discipline was unusual. (Decl. of Peter A.

---

[14]        Plaintiff does not proffer a definition of the term "disciplines."

Romero, Ex. X (Pl.'s Dep. 212:13-18).)  Similarly, Plaintiff's claim that his instructor at Con

Edison's Learning Center intentionally failed him is purely speculative (see Pl.'s Rule 56.1

Stmt. ¶13), and Plaintiff offers no evidence that a negative evaluation is an unusual

consequence of failing a training course.  Plaintiff thus has not satisfied his burden of coming

forward with evidence sufficient to frame a genuine issue of fact as to whether the proffered

reason is a pretext for the alleged discrimination and retaliation.  Accordingly, Plaintiff has not

satisfied his burden as to his May 14 complaint and June 2002 disciplines, evaluation, and wage

increase denial and summary judgment is granted to Defendant as to those issues.

<em>Plaintiff's Termination in August 2002</em>

Plaintiff next alleges that Defendant retaliated against him by terminating his

employment on August 28, 2002.  Plaintiff alleges that he complained to EEO Officer Brown of

discrimination and retaliation on May 14, 2002, and that his complaints were forwarded to

Ronald Verlizzo of Con Edison's Auditing department.  Such complaints constitute a protected

activity, and termination of employment is certainly an adverse employment action.  Burlington

Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998).  Plaintiff satisfies the final requirement to

establish a *prima facie* case, causal connection, by showing that the protected activity was

followed closely by the adverse employment decision.  Whereas on occasion courts in this

Circuit have held intervals of three or four months between the protected activity and the

adverse employment action to be insufficiently close to suggest a causal relation, those cases

are often characterized by occurrences in the interval that provide the defendant with a valid

rationale for an adverse employment action, see Lambert v. N.Y. State Office of Mental Health,

No. 97 CV 1347, 2005 U.S. Dist. LEXIS 5197 (E.D.N.Y. Apr. 24, 2000), or in which the

Plaintiff failed to proffer any evidence of retaliatory animus, see Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir. 1990).  As such, the passages of time fatally undermined the plaintiffs' assertions of causal connections in those cases.  In other instances, courts in this Circuit have held intervals of as long as six months to satisfy the causal connection requirement.  See Suggs v. Port Auth., No. 97 CV 4026, 1999 U.S. Dist. LEXIS 6319, at *20 (S.D.N.Y. Apr. 30, 1999).  Given that Plaintiff was terminated less than four months after he complained to EEO Officer Brown, and that Plaintiff's termination resulted from the investigation triggered by his complaint, the Court is satisfied that Plaintiff has made a sufficient showing of a causal connection to support a *prime facie* case.

Defendant shifts the burden back to Plaintiff by producing evidence of a legitimate, non-discriminatory rationale: that Plaintiff was fired for interfering with Verlizzo's investigation.  However, Plaintiff has adduced sufficient evidence to create a genuine issue of material fact as to whether that rationale was merely a pretext for an act of prohibited retaliation.  First, Plaintiff has provided the deposition testimony and the notes of Shop Steward Washington Sykes, both of which convey Sykes' view that "Verlizzo wanted to compromise the investigation from the very beginning" and his recollection that Verlizzo was "abusive" toward Plaintiff.  (Decl. of Peter A. Romero, Ex. L,  Ex. Z (Syke's Dep. 15-18)).  Second, Plaintiff has provided evidence that Human Resource Specialist Addeo had determined that Plaintiff was likely exercising legitimate privacy rights when he requested his day care not to disclose requested information to Con Edison, and accordingly an arbitrator[15] might not find

---

[15]     Under the collective bargaining agreement between Plaintiff's union and Con Edison, Plaintiff had the right to challenge his termination before an arbitrator.

Plaintiff's "interference" an adequate grounds for termination. A rational fact finder could consider this sufficient evidence that Con Edison's rationale for firing Plaintiff was a pretext to mask its impermissible retaliatory intent. Therefore, Defendant's motion for summary judgment is denied with respect to Plaintiff's Title VII, §1981, NYSHRL and NYCHRL claims for unlawful retaliation in terminating Plaintiff in August 2002.

> *Alleged Delays in Paying Backpay; Assignment of Night Shifts; Denials of Requested Transfers; and Forced Transfers, after Plaintiff Was Re-Hired*

Plaintiff alleges that Defendant retaliated against Plaintiff for his pre-termination discrimination complaints once he was re-hired by delaying Plaintiff's back pay. Plaintiff has not produced any evidence to substantiate his claim. Further, although the Second Circuit has never addressed whether a delay in providing back pay constitutes an adverse employment action, the Circuit has held that an employee suffers an adverse employment action if "he or she endures a materially adverse change in the circumstances of his employment." Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000). A change in working conditions becomes materially adverse only if it is "more disruptive than a mere inconvenience." Id. "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular situation." Id. Since Plaintiff has proffered no evidence as to how his delay in receiving his back pay caused a materially adverse change in his employment, no rational fact finder could find that the alleged delay in Plaintiff's back pay was an adverse employment action.

Plaintiff also brings claims based upon Defendant's having forced Plaintiff to work permanent night shifts, and denying Plaintiff's application for a transfer. Unfavorable hours do not constitute an adverse employment action for the purposes of Title VII. Johnson v. Eastchester Union Free School Dist., 211 F. Supp. 2d 514, 518 (S.D.N.Y. 2002). Thus, Plaintiff being forced to work on the night shift cannot constitute an adverse employment action. The Second Circuit has held that a denial of a transfer does not constitute an adverse employment action unless the denial created a materially significant disadvantage in the working conditions of the aggrieved employee; subjective personal disappointment is not enough. Beyer v. County of Nassau, 524 F.3d 160, 164 (2d Cir. 2008). Since Plaintiff has proffered no evidence that this denial created a significant disadvantage in working conditions other than dissatisfaction with the decision, a rational fact finder could not find that Plaintiff met his burden for an adverse employment action. Plaintiff has thus failed to meet his *prima facie* burden, and Defendant's motion for summary judgment for Plaintiff's claims with respect to these allegedly unlawful retaliatory actions is granted.

Plaintiff also alleges that Con Edison retaliated against him by transferring him out of the Bronx to various offices, each of which required a longer commute. Plaintiff alleges that his transfer out of the Bronx was ordered by Supervisor Mullen as an act of retaliation for complaining of Mullen's alleged interference with a Memorial Day ceremony (organized by Plaintiff) that sought to honor a Hispanic marine (see section I, *supra*). The Second Circuit has held that an inconvenience, such as an increased commute or unfavorable hours, does not constitute an adverse employment action for the purposes of Title VII. Johnson, 211 F. Supp. 2d at 518 (citing Galabya v. New York City Bd. of Ed., 202 F.3d 636, 639 (2d Cir. 1999)).

Plaintiff claims that the long commutes aggravated his back injury, but has offered nothing beyond conclusory assertions that this was the case. Cf. Jackson v. Heidelberg LLC, No. 02 CV 6536, 2005 WL 735961, *6 (W.D.N.Y. Mar. 31, 2005) (holding that a transfer requiring a commute that the defendant is aware plaintiff is physically unable to tolerate can qualify as an adverse employment action where employer is aware of the health risk posed by the commute). Nor has Plaintiff proffered any evidence that Defendant was aware of the actual or potential aggravation of his injury in connection with commutation. Because Plaintiff has failed to proffer any evidence that indicates that moving him from work site to work site would aggravate his back injury and has also failed to proffer any evidence that would indicate that he presented his employer with any information regarding medical restrictions on his work activities, Plaintiff fails to meet his *prima facie* burden on this element of his claims.

> *Alleged Retaliation by Denying Applications for Permanent Positions in the C-6 Program and then Ultimately Dismissing Plaintiff*

Plaintiff next alleges that, during his time in Con Edison's C-6 program from June 10, 2003, to December 7, 2003, Defendant retaliated against Plaintiff by denying his applications for permanent positions, which in turn led to his dismissal when his C-6 period ended. Since any of these applications, if granted, would have resulted in a title and status change, denial of the applications constitutes an adverse employment action. See Morris v. Landau, 196 F.3d at 110; Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir. 1998). Con Edison claims that Plaintiff was ineligible for each position because of his disciplinary record[16]

---

[16] Each of the positions to which Plaintiff applied required a satisfactory disciplinary record. Con Edison claims that this requirement is met when an applicant has not received any written warnings. Plaintiff had received two written warnings in June 2002 for allegedly leaving his shift early and failing a training course.

and his failure of a clerical aptitude test. Plaintiff responds that since the June 2002 written warnings were imposed as acts of discrimination or retaliation in the first place, denial of his applications on that basis must be discriminatory or retaliatory as well. However, as discussed previously, Plaintiff has failed to proffer enough evidence for a rational fact finder to find that either of the written warnings was an act of retaliation or discrimination. There is thus no obstacle to them serving as a legitimate explanation for the denial of Plaintiff's applications. Further, applicants can only secure the positions to which Plaintiff applied if they have passed that test. Candelario Dec. ¶¶12, 13. Plaintiff asserts that Con Edison's reliance on his failure of the aptitude test is also a pretext. However, Plaintiff has not proffered evidence sufficient to support such a finding. The sole evidentiary support provided, beyond Plaintiff's own conjecture, is the testimony of a co-worker that a temporary employee occasionally performed clerical work without having passed the test. This does not call into question Con Edison's assertion that the company does not hire workers for permanent placements in such positions unless they have passed the test. Accordingly, Plaintiff has failed to meet his Title VII burden with respect to the denial of his applications submitted during his C-6 period and resulting termination.

### Conclusion: Plaintiff's Retaliation Claims

For the above-stated reasons, Defendant is entitled as a matter of law to summary judgment dismissing Plaintiff's following retaliation claims: that Boland unfairly warned Plaintiff after Plaintiff reported an unsafe working condition; that Plaintiff was subjected to unwarranted disciplines after his May 2002 complaints; that Defendant retaliated against Plaintiff for his pre-termination complaints by delaying his back pay, forcing Plaintiff to

work permanent night shifts, and denying Plaintiff's application for a transfer; that Defendant transferred Plaintiff to various offices which each required longer commutes; and that Defendant continuously denied Plaintiff's applications for permanent positions which led to Plaintiff's dismissal in 2003. However, Defendant's motion for summary judgment is denied with respect to Plaintiff's retaliation claims based on: Defendant's denial of Plaintiff's October 2001 wage increase; Boland's alleged misclassification of Plaintiff's absences, which resulted in the denial of Plaintiff's application for a Splicer position; and Defendant's termination of Plaintiff in August 2002.

(iv)    Timeliness of Title VII Claims

As previously explained, Plaintiff has successfully carried his burden under Title VII with respect to his claim of disparate treatment for his October 2001 evaluation and wage increase denial and with respect to his retaliation claim regarding the denial of the Splicer position, his August 2002 discharge, and his October 2001 evaluation and wage increase denial. A plaintiff in a Title VII action must have filed a charge of discrimination or retaliation with the EEOC within 300 days of the alleged conduct. 42 U.S.C. § 2000e-5(e)(1). Plaintiff filed a charge with the EEOC on April 2, 2003. Thus, only incidents occurring on or after June 6, 2002, are actionable. Plaintiff's Title VII claims for the October 2001 wage increase denial are therefore untimely and must be dismissed. Similarly, Plaintiff's claim regarding the January 2002 denial for the Splicer position is untimely and must be dismissed.[17]   Plaintiff's Title VII

---

[17]    Plaintiff's §1981 and state and local law claims regarding the October 2001 wage increase denial and January 2002 denial for the Splicer position claim remain viable, however. This is because the statute of limitations is substantially longer for Plaintiff's claims under §1981 and the state and local human rights laws. New York State's three-year statute of limitations applies to Plaintiff's claims under §1981, the NYSHRL and the NYCHRL. Butts v. City of New York Dept. of

claim for his dismissal in August 2002, however, is timely.

D.    New York's Whistle-Blower Law Claims

Plaintiff also asserts claims under New York's Whistle-Blower Law, N.Y. Lab. Law §740 (2006).  That law provides in pertinent part that:

> "[a]n employer shall not take any retaliatory personnel action against an employee because such employee does any of the following: (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety, or which constitutes health care fraud; (b) provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any such violation of a law, rule or regulation by such employer; or (c) objects to, or refuses to participate in any such activity, policy or practice in violation of a law, rule or regulation." (Id.)

Further, the statute provides that it "shall be a defense to any action brought pursuant to this section that the personnel action was predicated upon grounds other than the employee's exercise of any rights protected by this section."  Id.  Plaintiff alleges that he observed unsafe work conditions, complained about those conditions to his supervisors, and that Defendant retaliated against him for those complaints, in violation of §740.

A plaintiff must initiate his suit within one year of the ocurrence of the retaliatory action. N.Y. Lab. Law § 740(4)(a)(2002).  Plaintiff filed his complaint on September 2, 2003, and therefore any claim under New York's Whistle-Blower Law will be untimely if it is based on retaliatory actions taken before September 2, 2002, unless the claim is subject to equitable tolling.  Plaintiff claims he was subject to the following retaliatory personnel actions

_____

Hous. Preservation and Development, 990 F.2d 1397, 1412 (2d Cir. 1993); Murphy v. American Home Products Corp., 58 N.Y.2d 293, 307, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983).

in the year before he filed his complaint: he was denied all the positions that he applied for during the six-month window that the C-6 program afforded him to find a permanent position; he was transferred to different locations and subjected to long commutes; and he was scheduled to work night shifts. The Court addresses those claims in turn.

With respect to Con Edison's denial of all of Plaintiff's applications for positions in the C-6 program, as previously stated, Con Edison has put forth evidence that it had a legitimate rationale for not offering Plaintiff any of those positions: he failed the required clerical aptitude exam. Plaintiff has not proffered sufficient evidence to frame a genuine issue of material fact for trial as to the adequacy of Plaintiff's defense with respect to this claim, and thus Defendant's motion for summary judgment on this claim is granted.

Plaintiff's allegations of other retaliatory actions during the course of 2003 do not constitute "retaliatory personnel actions" under §740(1)(e).[18] Transfers that require long commutes, and the assignment of undesirable night shifts, neither of which entails any loss of wages or benefits, are not actionable. See Gorgone v. Capozzi, 238 A.D.2d 308, 310 (2d Dep't 1997). Accordingly, Defendant's motion for summary judgment on these claims is granted.

Plaintiff argues that his August 2002 termination, technically barred by the statute of limitations of New York's Whistle-Blower Law, should be subject to "equitable tolling." The doctrine of equitable tolling permits courts "to deem filings timely where a litigant can show that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way." Torres v.Barnhart, 417 F.3d 276, 279 (2d Cir. 2005) (internal

---

[18]     Section 740(1)(e) of New York's Whistle-Blower Law defines a "retaliatory personnel action" as the "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.Y. Lab. Law §740(1)(e)(2002).

citations and quotation marks omitted). Plaintiff claims that he did not file his complaint within

one year of his August 2002 discharge because he was unaware of the statute of limitations.

While the Court is not without sympathy for the Plaintiff's unfortunate timing, "[m]ere

ignorance of the law does not warrant equitable tolling of a statute of limitations." Wong v.

Healthfirst, Inc., No. 04 CV 10061 (DAB), 2006 WL 2457944, at *2 (S.D.N.Y. Aug. 23, 2006);

see also Fennell v. Artuz, 14 F. Supp. 2d 374, 377 (S.D.N.Y. 1998) (holding that a plaintiff's

unfamiliarity with legal research and legal proceedings do not warrant equitable tolling).

Plaintiff also claims that he postponed bringing a complaint because OSHA representatives

advised him that he would be protected from further retaliation.  Yet he does not allege the type

of interference that would compel the extraordinary measure of equitable tolling.  Cf. Torres,

417 F.3d at 280 (finding that equitable tolling could be invoked when plaintiff was misled by an

attorney who claimed he would file a timely complaint but did not do so).  The Court thus finds

that equitable tolling is unwarranted in this instance.  Plaintiff's claims under the Whistle-

Blower law for retaliatory actions before September 2, 2002 are untimely, and Defendant's

motion for summary judgment with respect to those claims is granted.


E.            Plaintiff's Motion to Amend

              Pursuant to Federal Rule of Civil Procedure 15(a), Plaintiff moves the Court to

file a second amended complaint.  The proposed amendment is directed at the Court's analysis

of certain elements of the Plaintiff's §740 claims, namely, whether Plaintiff's safety complaints

identified a "violation of law, rule or regulation which violation creates and presents a

substantial and specific danger to the public health or safety."  However, assuming *arguendo*

that Plaintiff's safety complaints did identify such a violation that did present such a danger, the Court has determined that Plaintiff's §740 claims nevertheless do not survive Defendant's summary judgment motion.  Accordingly, Plaintiff's amendment would serve no purpose and Plaintiff's motion for leave to amend his complaint is denied.


III.  <u>CONCLUSION</u>

For the foregoing reasons, the Court denies Defendant's motion for summary judgment as to Plaintiff's §1981, NYSHRL and NYCHRL discrimination claims arising from his October 2001 evaluation and wage increase denial.  The Court denies Defendant's motion as to Plaintiff's §1981, NYSHRL and NYCHRL retaliation claims arising from his October 2001 evaluation and wage increase denial and the January 2002 denial of Plaintiff's application for a Splicer position, and as to Plaintiff's Title VII, §1981, NYSHRL and NYCHRL retaliation claims arising from Plaintiff's termination in August 2002.  The Court grants Defendant's motion for summary judgment as to the remainder of Plaintiff's Title VII, §1981, NYSHRL and NYCHRL discrimination and retaliation claims.  The Court grants Defendant's motion for summary judgment with respect to all of Plaintiff's §740 claims.  Plaintiff's motion to amend his complaint is denied.

The parties shall meet promptly with Magistrate Judge Fox for settlement purposes and,

unless a settlement is concluded, shall prepare and appear at a final pretrial conference on

January 9, 2009, in accordance with the Pre-Trial Scheduling Order entered today.

This Opinion and Order resolves docket entries nos. 39, 55, 59, and 65.

SO ORDERED.

Date: New York, NY
       September 29, 2008

LAURA TAYLOR SWAIN
United States District Judge